IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MARLYCE L. TABER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-0429-CV-W-ODS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION REVERSING AND REMANDING CASE
TO COMMISSIONER OF SOCIAL SECURITY FOR CALCULATION AND AWARD OF
BENEFITS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)**

Plaintiff applied for Title II disability benefits in August 2002, alleging she became disabled on October 1, 2001, due to degenerative disc disease and other spinal problems. The ALJ denied her application, concluding inconsistencies in the record as a whole created conflicts that justified discounting Plaintiff's subjective complaints, the opinion of her treating physicians (Doctor Dwayne Jones and Doctor Roger Jackson), and the opinion of the agency's consulting physician – all in favor of the opinion of a physician who never examined Plaintiff. The Court concludes there is not evidence in the record as a whole to support the ALJ's decision; in fact, the record as a whole conclusively establishes Plaintiff is disabled.

In November 1997, Plaintiff underwent a fusion at L4-5. In May 2001, she began complaining of pain radiating into her hip and thigh. An MRI revealed no problems with the 1997 fusion, and a cause for her pain could not be immediately determined (although degenerative disc disease was noted at L5-S1). By late 2001, Plaintiff's pain had increased significantly, and a series of increasingly invasive and sophisticated tests were conducted to determine the cause. R. at 120-21. In the meantime, Plaintiff was treated with epidural steroid injections, which provided a modicum of relief.

A diskography was performed in August 2002, which revealed a small annular tear at L2-L3, disc degeneration at L5-S1, and a partial annular tear at L5-S1.[1] R. at 108-11. Plaintiff's doctors recommended a combination of epidural steroid injections and pain medication; if this proved to be ineffective, Plaintiff might be a candidate for insertion of an epidural spinal cord stimulator. R. at 104-05.

In November 2002, Dr. Jones reported the combination of epidural injections, pain medication and physical therapy had proved unsuccessful. He had recommended a trial insertion of a spinal cord stimulator, but Plaintiff's insurance company had not approved the effort. In the meantime, Dr. Jones maintained Plaintiff's prescriptions for Vicodin and Zanaflex. R. at 284. The wait for insurance company approval continued until December 2003. In the interim, Plaintiff was treated with varying combinations of steroid injections and pain medication; on occasion, these efforts provided some relief but never for an extended period of time. R. at 251-83.

The trial (i.e., temporary) stimulator was inserted on December 31, 2003. R. at 243. The one-week trial was successful: greater than 40% of the pain was alleviated and Plaintiff was able to decrease her use of narcotic pain medication. Based on these results, Doctor Jones recommended insertion of a permanent stimulator, R. at 235, which was done on February 18, 2004. R. at 222-23. One week after the operation, Plaintiff reported "significant improvement" and was instructed to return to Dr. Jones on an as-needed basis. R. at 215. On July 22, 2004, Dr. Jones wrote a letter "delineating restrictions of Marlyce Taber." The letter confirms Plaintiff continued to see Dr. Jones even though there are no documents from those visits in the record. Dr. Jones' letter also indicates that, notwithstanding Plaintiff's surgeries and the insertion of the stimulator,

---

[1] An annular tear describes a tear or leak that "permits the irritating liquid material normally restricted to the center of the disc to come into contact with the innervated tissue" located in the annular tissue surrounding the center of the disc. http://www.wheelessonline.com/ortho/annular_tear (a website maintained by the Duke University Medical Center's Division of Orthopedic Surgery). The prognosis for this condition is not described as good, partially due to the propensity for re-tearing once scar tissue has formed.

Plaintiff is required to "sit three to four times a day during an eight hour period to reliever her symptoms of back pain," can lift no more than ten pounds, is limited to sedentary activity but can stand, walk or sit for no more than two hours a day, and must "lie down at least four to five times daily for 30 to 45 [minutes] to relieve her back pain . . . ." R. at 298.

A consultative examination was performed by Dr. Allen Parmet. He concluded Plaintiff's "functionality by objective measurements is at the sedentary level and imply she has the ability to occasionally lift ten pounds and frequently lift a negligible amount. She can stand and walk for a cumulative total of one hour daily and does require an assistive device for prolonged ambulation." R. at 290. He also indicated her ability to stand, walk *and sit* was limited to a total of two hours per day, R. at 290, although later he indicated Plaintiff could sit for a total of less than six hours per day. R. at 294.

During the hearing, the ALJ elicited testimony from a medical expert, Doctor Michael Gurvey. With regard to Plaintiff's back, Dr. Gurvey confirmed Plaintiff had a fusion at L4-5 in 1997, but made no mention of the annular tear (although he did acknowledge the insertion of the stimulator). R. at 311-12, 314. His estimation of Plaintiff's residual functional capacity was quite different from Dr. Jones' and Dr. Parmet's. R. at 312-13, 316-17. On cross-examination, Dr. Gurvey conceded the existence of "a full thickness annular tear" at L3-4, but testified his opinion would not change because some people have no pain as a result. R. at 318-19.

Plaintiff testified she obtains relief by lying down, elevating her knees, taking pain medication, and applying heat. R. at 329. The stimulator's effectiveness has decreased with time. R. at 330-31. She estimates she can sit for no more than twenty to thirty minutes at a time. R. at 333. She does not go to her children's events, grocery shops only with the help of her husband or children, and does not go out otherwise. R. at 335-36. She spends most of her time reading and does not do any chores to speak of on her own. R. at 345-46.

In rejecting Plaintiff's subjective complaints, the ALJ noted Plaintiff had numerous normal neurological examinations, reported improvement with steroids and the spinal

3

cord stimulator, had failed to lose weight or suffer muscle atrophy, and engages in daily activities consistent with normal living. R. at 16-17. The ALJ gave "substantial weight to the testimony and opinion of the medical expert, Dr. Gurvey" because he had the benefit of reviewing all the medical records and ultimately accepted Dr. Gurvey's opinion about Plaintiff's residual functional capacity. R. at 17.

A treating physician's opinion is entitled to deference. E.g., Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991). Plaintiff was treated for an extended period of time by two doctors, one of which was an orthopedic surgeon. Their records are amply supported by diagnostic tests. Her treating physicians' reports and findings were supported by the consulting physician; while a consultant's opinion is not entitled to as much consideration as a treating physician's, it is unusual for the Commissioner to reject opinions from both a treating physician and a consulting physician in favor of an opinion from a doctor who has never examined the claimant but has merely reviewed her records. The fact that the medical advisor had the benefit of all the records does not elevate his opinion; if it did, the treating physician rule would be eviscerated. Neither the record nor the law justifies the ALJ's decision to accord substantial weight to Dr. Gurvey's opinion. Cf. Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). All of the justifications for the treating physician rule are applicable in this case. Plaintiff's doctors treated her regularly and for an extended period of time. Their greater familiarity with the case, buttressed by the objective medical evidence, requires substantial deference to their opinions.

The ALJ's observations about the efficacy of treatment lose significance when considered in context. It is true that various measures provided relief, but on all such occasions the relief proved temporary. In fact, Dr. Jones clearly indicated the epidural injections and pain medication were intended as short-term solutions; they were used for an extended period of time only because it took so long for Plaintiff's insurance company to approve the insertion of a spinal cord stimulator. While the stimulator provided effective, the degree of that efficacy has varied over time – but the mere fact that it has varied over time does not disprove any of the Plaintiff's testimony or her doctors' opinions. To the contrary, given that all other measures provided no more than

4

Case 4:05-cv-00429-ODS   Document 11   Filed 11/16/05   Page 4 of 5

temporary relief, it should not be surprising that this measure did not provide permanent relief. Finally, the mere fact that Plaintiff's pain was diminished does not mean that she is not still unable to work. The doctor most familiar with her condition and the treatment employed has offered an opinion on the matter; there is no competent evidence to overcome the deference due to that opinion.

      The Commissioner's final decision is not supported by substantial evidence in the record as a whole. In fact, the record conclusively demonstrates Plaintiff is entitled to an award of benefits. The Commissioner's final decision is reversed and the case is remanded for calculation and award of benefits.

IT IS SO ORDERED.

DATE: November 16, 2005

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT